**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| JANE DOE, in her own capacity and as the natural mother and legal guardian of her minor child John Doe; JOHN DOE,<br><br>          Plaintiffs,<br><br>vs.<br><br>BILL FRANKLIN DICKENSON; CITY OF PHOENIX; ALHAMBRA SCHOOL DISTRICT,<br><br>          Defendants. | No. CV-07-1998-PHX-GMS<br><br>**ORDER** |

Pending before the Court is the "Motion to Dismiss/Motion for Summary Judgment" of Defendant City of Phoenix ("the City") (Dkt. # 39), which has been joined by Defendants Alhambra School District ("the District") (Dkt. # 40) and Bill Franklin Dickenson ("Dickenson") (Dkt. # 42). Also pending before the Court is the District's "Second Motion for Summary Judgment" (Dkt. # 83), which has not been joined by the other Defendants. For the following reasons, the Court grants in part and denies in part both motions.[1]

---

[1] Plaintiffs have requested oral argument. The request is denied because the parties have thoroughly discussed the law and the evidence, and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

## BACKGROUND

This case involves Plaintiff John Doe's allegation that he was molested by Defendant Dickenson. At the time of the alleged acts, Dickenson was assigned to John Doe's elementary school as a School Resource Officer ("SRO"). (Dkt. # 84 at 1; Dkt. # 107 at 2.) An SRO is a law enforcement officer assigned to a school or school area. (Dkt. # 84 Ex. G at 2.) As part of his duties, Dickenson ran the Wake Up! Club, an after-school program for students. (Dkt. # 107 Ex. E at 105-08.) John Doe, then fourteen years old, attended the Wake Up! Club program. (Dkt. # 107 Ex. A at 1.)

In late 2006, John Doe alleged that Dickenson had molested him on five separate occasions during the preceding year. (Dkt. # 107 Ex. A at 2.) Specifically, he alleged that the molestations occurred: (1) on January 16, 2006, at Dickenson's house on a day off from school; (2) in June of 2006, in a storage room at the elementary school after the Wake Up! Club program had ended; (3) on July 5, 2006, in the same storage room after the Wake Up! Club program had ended; (4) in late July or early August of 2006, at John Doe's house; and (5) in September of 2006, at Dickenson's house. (*Id.*)

After John Doe made these allegations, both criminal and administrative investigations were opened. (*See* Dkt. # 107 Ex. A; Dkt. # 107 Ex. B.) Pursuant to the criminal investigation, Dickenson's school computer was seized and searched by a forensic examiner. (*See* Dkt. # 118 Ex. 4; Dkt. # 107 Ex. H.) Both investigations were ultimately inconclusive. (Dkt. # 107 Ex. A at 5-6; Dkt. # 107 Ex. B at 3-4.)

On June 12, 2007, Plaintiffs filed a notice of claims letter with Defendants. (Dkt. # 39 Ex. 1.) In the letter, Plaintiffs notified Defendants of a variety of claims Plaintiffs intended to assert. (*Id.* at 1.) The letter also outlined the facts underlying those claims, stating that Dickenson "befriended" and "attempted to serve as a father figure" to John Doe (*id.* at 1-2), that he "[won] the trust" of Jane Doe, the mother, in order to sexually molest her son (*id.* at 2), and that the City and the District failed to properly investigate and analyze Dickenson's personal and psychological background and improperly allowed Dickenson to socialize with and be alone with children (*id.*). The letter then stated that John Doe suffered

1 "severe psychological damages," was "undergoing psychological treatment," became
2 "withdrawn and alienated from his mother," and underwent counseling to address these
3 problems. (*Id.*) Based on those facts, Plaintiffs demanded $8,000,000 from Defendants to
4 settle their claims; $6,000,000 for John Doe's claims and $2,000,000 for Jane Doe's claims.
5 (*Id.*)

6 On October 16, 2007, Plaintiffs filed the complaint underlying this action. (Dkt. # 1.)
7 Plaintiffs alleged state law tort claims as well as a federal claim for violation of Plaintiffs'
8 Fourteenth Amendment rights. (*Id.* at 1.) The City filed its Motion to Dismiss/Motion for
9 Summary Judgment on April 25, 2008. (Dkt. # 39.) The District filed its Second Motion for
10 Summary Judgment on July 22, 2008. (Dkt. # 83.)

**JURISDICTION**

The Court has federal question jurisdiction over Plaintiffs' § 1983 claim. *See* 28
U.S.C. §§ 1331, 1343. The Court has supplemental jurisdiction over Plaintiffs' related state
law claims. *See* 28 U.S.C. § 1367.

**DISCUSSION**

**I.     The Defendants' Motion to Dismiss/Motion for Summary Judgment**

The City moved to dismiss Plaintiffs' state law claims for failure to comply with
Arizona's notice of claims statute, Arizona Revised Statutes section 12-821.01. (Dkt. # 39
at 2-7.) That motion has been joined by both Dickenson (Dkt. # 42 at 1-2) and the District
(Dkt. # 40 at 2-10), the latter of which has advanced further challenges to Plaintiffs' federal
law claim (Dkt. # 40 at 10-11). All of the parties acquiesce in the Court's evaluating the
notice of claims issue under the summary judgment standard of Federal Rule of Civil
Procedure 56. (*See* Dkt. # 39 at 1; Dkt. # 40 at 1; Dkt. # 42 at 1-2; Dkt. # 58 at 1.) The
District's challenge to Plaintiffs' federal law claim remains a motion to dismiss, and the
Court will therefore evaluate that challenge under the standard set forth in Federal Rule of
Civil Procedure 12(b)(6).

    **A.     Notice of Claims**
        **1.     Legal Standard**

1    Summary judgment is appropriate if the admissible evidence, viewed in the light most
2 favorable to the nonmoving party, "show[s] that there is no genuine issue as to any material
3 fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c);
4 *see Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). The moving
5 party bears the initial burden of supporting its contention that there is no genuine issue of
6 material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The burden is then on
7 the nonmoving party to establish that a genuine issue of material fact exists. *See id.*
8 Substantive law determines which facts are material, and "[o]nly disputes over facts that
9 might affect the outcome of the suit . . . will properly preclude the entry of summary
10 judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Similarly, the
11 dispute must be genuine; that is, the evidence must be "such that a reasonable jury could
12 return a verdict for the nonmoving party." *Id.*

13    **2.    Analysis**

14    All Defendants argue that Plaintiffs' notice of claims letter fails to comply with
15 Arizona's notice of claims statute. (Dkt. # 39 at 2-7; Dkt. # 40 at 2-10; Dkt. # 42 at 1-2.)
16 The notice of claims statute provides that all persons having a claim against a public entity
17 or public employee must provide notice of that claim within 180 days after the cause of
18 action accrues. Ariz. Rev. Stat. § 12-821.01(A). "The claim shall contain facts sufficient to
19 permit the public entity or public employee to understand the basis upon which liability is
20 claimed. The claim shall also contain a specific amount for which the claim can be settled
21 and the facts supporting that amount." *Id.* If the claimant fails to timely file a proper notice
22 of claims, the action is barred. *See id.*

23    Defendants argue that Plaintiffs' notice of claims letter is deficient because it fails to
24 state either a "specific amount for which the claim can be settled" or "facts supporting that
25 amount." (Dkt. # 39 at 2-7; Dkt. # 40 at 2-10; Dkt. # 42 at 1-2.)

26    **a.    "Amount for Which the Claim Can be Settled"**

27    Defendants argue that the $8,000,000 settlement offer in Plaintiffs' notice of claims
28 letter was inappropriate because putative plaintiffs must detail precisely how much they are

1  demanding from *each* defendant on *each* claim. (Dkt. # 39 at 3-4; Dkt. # 40 at 2-8.)
2  Defendants' argument, however, ignores the plain language of the statute. *See Coos County*
3  *Bd. of County Comm'rs v. Kempthorne*, 531 F.3d 792, 803-04 (9th Cir. 2008) ("Statutory
4  interpretation begins with the plain language of the statute.") (quoting *K & N Eng'g, Inc. v.*
5  *Bulat*, 510 F.3d 1079, 1081 (9th Cir. 2007)). The statute requires only that a claimant
6  provide "*a specific amount*" for which the claim can be settled. Ariz. Rev. Stat. § 12-
7  821.01(A) (emphasis added). The statute does not require "specific amounts" or "specific
8  amounts as to each defendant." Indeed, in the absence of discovery, such a requirement
9  would result in damage divisions that are entirely arbitrary in many cases. Because the
10 notice of claims letter demanded $8,000,000, and because $8,000,000 is "a specific amount,"
11 the claims letter was sufficient in this regard.

12 Defendants argue that *Deer Valley Unified School District v. Houser*, 214 Ariz. 293,
13 152 P.3d 490 (Ariz. 2007), and *Bamonte v. City of Mesa*, No. CV-06-01860, 2007 WL
14 2022011 (D. Ariz. July 10, 2007), establish that a "global settlement" offer is invalid under
15 the notice of claims statute. Neither case, however, stands for that proposition. *Deer Valley*
16 found that the use of ambiguous qualifying language – in that case, "approximately $35,000,"
17 "no less than $300,000," and "similar appropriate pay increases" – did not constitute a
18 demand for a "specific" amount. 214 Ariz. at 296, ¶¶ 10-11, 152 P.3d at 493. Plaintiffs'
19 letter, by contrast, contained no ambiguous language in its demand; rather, Plaintiffs
20 demanded the specific and definite amount of $8,000,000. (*See* Dkt. # 39 Ex. 1 at 2.)
21 *Bamonte* found that a demand for "$20,000,000[] plus attorneys fees and costs" was not
22 sufficiently specific because, although "$20,000,000 is on its own an unqualified and specific
23 amount . . . the additional demands for unspecified fees and costs introduced uncertainty into
24 the proposed settlement value." 2007 WL 2022011, at *6. Here, Plaintiffs' letter did not
25 demand unspecified fees and costs; rather, Plaintiffs demanded $8,000,000 even. Thus,
26 Plaintiffs demanded "a specific amount" for which the claim could be settled.

Because Plaintiffs demanded a specific amount for which the claim could be settled, their notice of claims letter was not deficient, and summary judgment is not appropriate in this regard.[2]

### b. "Facts Supporting that Amount"

Defendants also argue that Plaintiffs' notice of claims letter fails to provide sufficient facts to support the amount demanded. (Dkt. # 39 at 4-7; Dkt. # 40 at 8-10.) The parties' arguments on this point are very thorough, but they are somewhat inapposite in light of authority published after the briefing in this case concluded. The *Backus* case, which is currently the latest word from the Arizona courts on this issue, explicitly concluded that a notice of claims letter is sufficient if it provides *any* facts supporting the proposed settlement amount. 2008 WL 2764601, at *7 ¶ 28 ("If the notices of claim provided by Backus and Johnson contain *any* facts to support the proposed settlement amounts, regardless of how meager, then such notices met not only the literal language of the statute but also any requirement that may be implied from *Deer Valley*.").

Even assuming that something more than meager facts must be provided, the notice of claims letter in this case provided sufficient facts in support of the proposed settlement amount. Specifically, the letter stated that the amount was based on Dickenson's insinuating himself into Plaintiffs' lives and then repeatedly molesting John Doe, the City's and the District's failure to investigate Dickenson's background and their failure to prevent him from interacting with children, and the severe psychological damages, emotional withdrawal, and mental health treatment that allegedly ensued. (Dkt. # 39 Ex. 1 at 1-2.) Plaintiffs' letter thus meets the requirements of the notice of claims statute.

---

[2]Plaintiffs have filed a citation to supplemental authority (Dkt. # 71), to which Defendants have responded (*see* Dkt. ## 73, 77). Because Plaintiffs' supplemental authority is not necessary to reject Defendants' challenges to the notice of claims letter, the Court need not consider the parties' arguments regarding the supplemental authority.

- 6 -

Because the notice of claims letter contained a specific amount for which the claim could be settled and facts supporting that amount, Defendants' motion to dismiss Plaintiffs' state law claims is denied.[3]

### B. Federal Law Claim

#### 1. Legal Standard

In order to survive a dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise the right of relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). "The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216 (3d ed. 2004)). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 127 S. Ct. at 1974).

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). In addition, the Court must assume that all general allegations "embrace whatever specific facts might be necessary to support them." *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir. 1994). Although "a complaint need not contain detailed factual allegations," *Clemens*, 534 F.3d at 1022, the Court will not assume that the plaintiff can prove facts different from those alleged in the complaint, *see Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1035 (9th Cir. 2005). Similarly, legal conclusions

---

[3]The parties offer extensive argument on the propriety and applicability of an amended notice of claim filed in the course of litigation. Because the original notice of claim is not deficient, the Court need not reach the parties' arguments in this regard.

- 7 -

1 couched as factual allegations are not given a presumption of truthfulness, and "conclusory
2 allegations of law and unwarranted inferences are not sufficient to defeat a motion to
3 dismiss." *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).

        **2.**     **Analysis**

5         The District argues that Plaintiffs' Complaint fails to properly state a § 1983 claim
6 against the District. (Dkt. # 40 at 10-11.) Plaintiffs respond not by explaining how the
7 Complaint satisfies the pleading standard, but rather by pointing to evidence obtained in the
8 course of discovery. (Dkt. # 58 at 6-7.) Plaintiffs offer no argument that the *Complaint*
9 adequately states a claim under which relief could be granted (*see id.*), nor have Plaintiffs
10 moved to amend their Complaint. Thus, under the local rules, the Court is entitled to treat
11 Plaintiffs' failure to respond as waiver of the issue and consent to Defendants' argument. *See*
12 LRCiv 7.2(i), (b), (c); *see also Currie v. Maricopa County Cmty. College Dist.*, No. CV-07-
13 2093, 2008 WL 2512841, at *2 n.1 (D. Ariz. June 20, 2008) ("Plaintiff does not respond to
14 this argument, and her failure to do so serves as an independent basis upon which to grant
15 [the] motion[.]") (citing LRCiv 7.2(i)); *E.E.O.C. v. Eagle Produce, L.L.C.*, No. CV-06-1921,
16 2008 WL 2796407, at *2 (D. Ariz. July 18, 2008) ("Parties must come forward with their
17 points and authorities in support of or in opposition to a motion.") (citing LRCiv 7.2(b), (c)).
18 In its discretion, however, the Court will also evaluate the merits of Defendants' challenge.
19 *See* LRCiv 7.2(i) ("[N]on-compliance *may* be deemed a consent to the denial or granting of
20 the motion[.]") (emphasis added).

21         The Court finds that Plaintiffs' Complaint fails to state a § 1983 claim against the
22 District because the Complaint does not properly allege a policy, practice, or custom by the
23 District that caused a constitutional violation. Liability under § 1983 cannot be premised on
24 a *respondeat superior* theory. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). To
25 succeed on a § 1983 cause of action against the District, Plaintiffs *must* allege that a policy,
26 practice, or custom of the District permitted a constitutional violation to occur. *See Christie*
27 *v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999).

28

1  Here, Plaintiffs' Complaint makes only three allegations involving the District, all of which are specific to Dickenson and do not assert any custom, practice, or policy. The Complaint states that the District "negligently trained and supervised *its agent Defendant Dickenson*," "did not investigate Plaintiffs' complaints of misconduct *against Defendant Dickenson*," and "did not take any corrective actions in response to Plaintiffs' complaints of misconduct *against Defendant Dickenson*." (Dkt. # 1 at 3 (emphases added).) The Complaint never states that the District had a *custom, practice, or policy* of negligent training or supervision, or of failing to investigate complaints of misconduct. Rather, it merely alleged that the District's behavior *solely as to Defendant Dickenson* was the source of its liability. Thus, Plaintiffs' Complaint does not sufficiently plead a custom, practice, or policy of the District giving rise to a cause of action under § 1983.[4]

Nor does the mere allegation of negligence in the single instance of Defendant Dickenson create the inference of a broader custom, practice, or policy. *See Christie*, 176 F.3d at 1235 ("A single constitutional deprivation ordinarily is insufficient to establish a longstanding practice or custom. Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy.") (citation and internal quotations omitted). Because Plaintiffs have failed to allege a custom, practice, or policy that would create a cognizable claim under § 1983, the Court dismisses that claim against the District without prejudice.

**II.     The District's Second Motion for Summary Judgment**

    **A.     Legal Standard**

The same summary judgment standard described above applies to the District's Second Motion for Summary Judgment. *See supra* Part I.A.1.

---

[4]The Complaint does make allegations of custom, practice, and policy – but limits them to the City's police department: "At all times material to this Complaint, Defendant Dickenson was acting . . . in accordance with the customs, practices, and policies *of the Police Department of the City of Phoenix*." (Dkt. # 1 at 2 (emphasis added).)

- 9 -

**B.     Analysis**

The District argues that it is entitled to summary judgment on Plaintiffs' state and federal law claims. Each will be addressed in turn.

**1.     State Law Claims**

The District advances objections to Plaintiffs' state law allegations of vicarious liability and direct liability.

**a.     Vicarious Liability**

The District argues that it cannot be held vicariously liable for any state law torts committed by Dickenson because Dickenson was not its employee (Dkt. # 83 at 3-5), and also because, even if he were, any molestation would be outside the scope of Dickenson's employment (Dkt. # 83 at 5-6). Although Plaintiffs provide a lengthy factual rebuttal to the District's first assertion (that Dickenson was not an employee), they make no argument, and offer no authority, as to whether an SRO acts within the scope of his employment if he molests a child. (*See* Dkt. # 108 at 2-6.) Thus, Plaintiffs are deemed to have consented to Defendants' argument under the local rules. *See* LRCiv 7.2(i), (b), (c); *see also Currie*, 2008 WL 2512841, at *2 n.1; *Eagle Produce*, 2008 WL 2796407, at *2.

Regardless, the Court concludes that even if Dickenson was an employee of the District, Dickenson was not acting within the scope of his employment when he molested John Doe. For an employer to be vicariously liable for the negligent or tortious acts of an employee, the employee's actions must be within the scope of employment. *Baker ex rel. Hall Brake Supply, Inc. v. Stewart Title & Trust of Phoenix, Inc.*, 197 Ariz. 535, 540, ¶ 17, 5 P.3d 249, 254 (Ariz. Ct. App. 2000). "Conduct falls within the scope if it is the kind the employee is employed to perform, it occurs within the authorized time and space limits, and furthers the employer's business even if the employer has expressly forbidden it." *Id.*

Here, Plaintiffs – who now bear the burden of producing admissible evidence that raises a genuine issue of material fact – have produced no evidence that Dickenson was employed to perform the conduct in which he engaged, have produced no evidence that Dickenson's alleged molestations of John Doe were actuated by a desire to serve the District,

and have produced no evidence that Dickenson's actions were undertaken in the course of his duties as an SRO. Indeed, the uncontested evidence is to the contrary. While two of the incidents occurred in a storage closet on school grounds, all of the other incidents occurred off-campus after school hours, and the two incidents that did occur on school grounds both happened *after* the Wake Up! Club program had concluded. (*See* Dkt. # 107 Ex. A at 2.) Thus, none of the incidents occurred within the authorized time and space limits of Dickenson's employment. Therefore, under the facts as produced by the parties, any molestation Dickenson committed was not within the scope of his employment.

The Court's conclusion is informed by persuasive authority that is directly on point, for although the Arizona courts have not to date addressed the specific question of whether a school employee who molests a child is acting within the scope of employment, cases from other jurisdictions, and the secondary authorities, are virtually unanimous in holding that a school employee does not act within the scope of employment by molesting a child. *See, e.g.*, *Medlin v. Bass*, 398 S.E.2d 460 (N.C. 1990); *John R. v. Oakland Unified Sch. Dist.*, 769 P.2d 948 (Cal. 1989); *Boykin v. District of Columbia*, 484 A.2d 560 (D.C. 1984); *Bozarth v. Harper Creek Bd. of Educ.*, 288 N.W.2d 424 (Mich. Ct. App. 1979); *see also* 31 Am. Jur. Proof of Facts 3d 261 § 7 (2008) ("In all cases examined to date, courts have declined to impose vicarious liability upon a school district under the doctrine of respondeat superior for the criminal conduct of a teacher in sexually molesting a student. The general rationale, expressed a number of ways, is that such conduct is criminal and outrageous, that it cannot be construed to be within the teacher's scope of employment under any circumstances, and therefore the employer cannot be held vicariously responsible for the misconduct of the employee."); 86 A.L.R. 5th 1 § 10 (2001) (collecting cases).

There are no cases in Arizona that would counsel against agreeing with these authorities. The Court is aware of *Arizona v. Schallock*, 189 Ariz. 250, 259, 941 P.2d 1275, 1284 (Ariz. 1997), in which the Arizona Supreme Court held that certain incidents of sexual harassment were within the scope of employment under the circumstances of that case. The

facts of *Schallock*, however, are distinguishable from the facts before the Court here.[5] In *Schallock*, the court concluded that the sexual harassment was incidental to authorized work, and therefore within the course and scope of employment, based on a number of factors. *Id.* at 257-58, 941 P.2d at 1282-83.

Specifically, the court considered: (1) the time and place of the conduct ("almost all of [the employee's] improper acts took place at [the employer's] office or a related location"); (2) the previous relations between master and servant ("[the employer] was aware for close to a decade that [the employee], the person managing its affairs, was engaged in egregious improprieties and did little or nothing to call a halt"); (3) whether the master had reason to expect that the act would occur ("A jury might well find that if [the employer] was aware of the work environment [the employee] created, it should have anticipated even the final [conduct]"); and (4) whether the acts were motivated by a purpose to serve the master ("[the employee] was . . . serving the master by running the office"). *Id.*

In this case, to the contrary: (1) the majority of the alleged conduct occurred off school grounds, and those incidents that did occur at the school occurred after the Wake Up! Club program had concluded; (2) there is no evidence that the District was aware of Dickenson's conduct, much less that it had been aware of such conduct for a significant period of time; (3) there is no evidence that the District had any knowledge about Dickenson that should have put it on notice that the final conduct would occur; and (4) Dickenson was not performing any of his duties when he allegedly molested John Doe, and thus his acts would not be even partly motivated by a purpose to serve the District.

---

[5]The Arizona Supreme Court was also careful to explain that sexual harassment cases involve a number of "special factual and legal considerations" that make those claims distinct from "the great majority of cases involving torts committed by a servant against either a non-employee or co-employee." *Schallock*, 189 Ariz. at 257, 941 P.2d at 1282. The *Schallock* court thus emphasized that its analysis was not meant to be imported wholesale into other factual scenarios in the absence of good reasons to do so. Plaintiffs have advanced no such reasons here.

1  For these reasons, the Court concludes that even if Dickenson was an employee of the
2  District, he was not acting within the scope of his employment when he allegedly molested
3  John Doe. Therefore, the Court grants summary judgment in favor of the District on
4  Plaintiffs' state law claims for vicarious liability.

### b. **Direct Liability**

6  The District next argues that it cannot be held directly liable for Plaintiffs' injuries
7  because Plaintiffs have not produced sufficient evidence of the District's knowledge that
8  Dickenson had a propensity to molest children. (Dkt. # 83 at 6-13.) Both Plaintiffs and the
9  District agree that Plaintiffs must produce evidence from which a reasonable jury could
10 conclude that the District knew that Dickenson had a propensity to molest children. *See* Ariz.
11 Rev. Stat. § 12-820.05 ("A public entity is not liable for losses that arise out of and are
12 directly attributable to an act or omission determined by a court to be a criminal felony by
13 a public employee *unless the public entity knew of the public employee's propensity for that*
14 *action*.") (emphasis added). (*See* Dkt. # 83 at 6; Dkt. # 108 at 6.)

15 In response to the District's challenge, Plaintiffs offer the following assertions to
16 establish the District's knowledge of Dickenson's alleged propensity to molest children: (1)
17 that Dickenson had an office at the elementary school; (2) that Dickenson had a school
18 computer; (3) that the District had the ability to monitor that computer for pornography; (4)
19 that a former principal of the school had watched pornography on his work computer; (5) that
20 a different police officer working as a school resource officer was removed from another
21 school for accessing inappropriate materials on his school computer; and (6) that, after John
22 Doe alleged that Dickenson molested him, the City's "examination of Officer Dickenson's
23 computer indicates that he had accessed . . . pornographic websites on his school computer,"
24 and that these websites included videos of "gay pornography directed at 'boys.'" (Dkt. # 108
25 at 6-9.)

26 Four of Plaintiffs' assertions are simply irrelevant to the inquiry. Plaintiffs' first and
27 second assertions – that Dickenson had an office and a computer at the school – do not, in
28 and of themselves, suggest that Dickenson had a propensity to molest children, for Plaintiffs

- 13 -

1  have produced no evidence that having a computer or an office at a school suggests that a
2  person is likely to molest children.  Plaintiffs' fourth assertion – that a principal at John
3  Doe's school had viewed pornography on his school computer – is not relevant to whether
4  *Defendant Dickenson* had a propensity to molest children.  Plaintiffs' fifth assertion – that
5  another school resource officer was removed from a different school for accessing
6  inappropriate materials on his school computer – is likewise not relevant to Dickenson's
7  alleged propensity.  Moreover, it is based on the testimony of a police officer who admitted
8  having no direct knowledge of the episode himself, but only having heard of it secondhand.
9  (*See* Dkt. # 107 Ex. F at 66-67.)  That is inadmissible hearsay, *see* Fed. R. Evid. 801(c), and
10 therefore the Court cannot consider it, *see* Fed. R. Evid. 802.[6]

11         Plaintiffs' third and sixth assertions – that the District had the ability to monitor
12 Dickenson's school computer and that Dickenson was subsequently found to have accessed
13 "gay pornography directed at 'boys'" on that computer – might, if true, raise a genuine issue
14 of material fact, but Plaintiffs have misrepresented the record in making these assertions.
15 First, Plaintiffs do not raise a genuine issue of material fact as to whether the District had the
16 capability to monitor Dickenson's school computer for pornography.  Although Plaintiffs
17 make that assertion in their Response, Plaintiffs do not support it by any citation to their
18 statement of facts.  Thus, they have failed to raise a genuine issue of material fact on this
19 point.  *See* LRCiv 56.1(e) ("Memoranda of law filed in support of or in opposition to a
20 motion for summary judgment, including reply memoranda, shall include citations to the
21 specific paragraph in the statement of facts that supports factual assertions made in the

---

[6] Additionally, the deposition to which Plaintiffs cite states only that "inappropriate material" was found on the computer, not that the material suggested that the SRO had a propensity to molest children. (*See* Dkt. # 107 Ex. F at 66-67.)  Also, the deposition does not state that the incident in question occurred before the alleged molestation in this case, the only time relevant to the District's knowledge of a risk of molestation. (*See id.*)  Thus, Plaintiffs have not carried their burden of establishing that this evidence creates a genuine issue of material fact as to whether the District knew that Dickenson had a propensity to molest children.

- 14 -

1 memoranda."). This is not just a procedural deficiency, for Plaintiffs' statement of facts *does*
2 *not state anywhere* that the District had the capability to monitor Dickenson's computer in
3 the way Plaintiffs suggest, nor is there any evidence in the record to support that inference.
4 The only evidence before the Court regarding the websites that computer visited is the search
5 conducted incident to the criminal investigation of John Doe's allegations against Dickenson;
6 there is simply no evidence in the record that the District had either the legal right or the
7 technological capacity to conduct the type of monitoring on which Plaintiffs' argument relies.
8 In the absence of such evidence, Plaintiffs have failed to raise a genuine issue of material fact
9 as to whether the District knew of any propensity Dickenson had to molest children.

10 Further, Plaintiffs' statements that "examination of Officer Dickenson's computer
11 revealed that he had accessed . . . pornographic websites on his school computer," and that
12 two of those sites contained videos of "gay pornography directed at 'boys,'" are unsupported
13 by the record. Indeed, Plaintiffs' repeated and direct statements that "[t]he City of Phoenix's
14 examination of Officer Dickenson's computer indicates that he had accessed [those]
15 pornographic websites" are *patently false*. The examination in question made no such
16 finding – in fact, it yielded exactly the opposite conclusion. The forensic computer examiner
17 searched the computer and affirmatively stated that the computer had not accessed the two
18 websites on which Plaintiffs found the videos in question. (Dkt. # 118 Ex. 4 at 1 ("The
19 absence of any hits for the search terms above means that there is no evidence that the
20 computer was used to visit any website containing within its name or URL any of those
21 terms. For example, if the computer had been used to access a website called [website
22 name], my search should have revealed hits for the search term [website name].").) Thus,
23 even if the District could have monitored Dickenson's computer use, it is clear that
24 Dickenson did not use the computer to visit the two websites on which Plaintiffs found the

videos in question. Therefore, there is no genuine issue of material fact as to whether the District knew of any propensity Dickenson had to molest children.[7]

For all of these reasons, the Court grants summary judgment in favor of the District as to Plaintiffs' state law claims for direct liability.

### 2. Federal Law Claim

The District argues that Plaintiffs have failed to raise a genuine issue of material fact as to whether the District had a policy, practice, or custom that caused the alleged molestation. (Dkt. # 83 at 13-16.) The District further argues that it is entitled to qualified immunity. (Dkt. # 83 at 16-17.) However, because the Court has dismissed Plaintiffs' § 1983 cause of action against the District on the ground that the Complaint fails to state a claim on which relief may be granted, the motion for summary judgment on that claim is not properly before the Court. Therefore, the Court will not reach the parties' arguments in this regard, and the District's motion is denied as moot.

## CONCLUSION

Because Plaintiffs' notice of claims letter contained a specific amount for which the claim could be settled and facts supporting that amount, Defendants' motion for summary judgment on Plaintiffs' state law claims is denied. Because Plaintiffs' Complaint does not properly allege a custom, practice, or policy of the District that caused a constitutional deprivation to Plaintiffs, Plaintiffs' § 1983 claim is dismissed as to the District. The Court grants summary judgment on Plaintiffs' state law claims against the District for vicarious and

---

[7]The only other evidence in the record that might bear on this issue is a printed page found among Dickenson's papers listing websites (some of them obviously pornographic), usernames, and passwords. (*See* Dkt. # 107 Ex. I at 3; Dkt. # 118 Ex. 3 at 92.) Plaintiffs' attorneys have apparently visited those sites and claim that two of them include videos that, in the words of Plaintiffs' attorneys, contain "gay pornography directed at 'boys.'" (Dkt. # 108 at 8.) The mere fact that Dickenson had passwords to those websites, however, is not sufficient to raise a genuine issue of material fact as to whether he visited those sites *on his school computer*. The only evidence in the record specific to that computer is the forensic examiner's report, in which the examiner explicitly concluded that the computer had not visited the two websites at issue.

direct liability because Plaintiffs have failed to raise a genuine issue of material fact as to whether Dickenson was acting within the scope of his employment and whether the District knew of Dickenson's alleged propensity to molest children. Given the Court's ruling on the District's motion to dismiss, the District's motion for summary judgment on Plaintiffs' federal law claims is denied as moot.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss/Motion for Summary Judgment (Dkt. ## 39, 40) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that the District's Second Motion for Summary Judgment (Dkt. # 83) is **GRANTED IN PART** and **DENIED IN PART**.

DATED this 13th day of November, 2008.

*G. Murray Snow*
G. Murray Snow
United States District Judge