1    **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9    JANE DOE, in her own capacity and as)      No. CV-07-01998-PHX-GMS
     the natural mother and legal guardian of)
10   her minor child, John Doe; JOHN DOE,  )     **ORDER**
                                           )
11          Plaintiffs,                    )
                                           )
12   vs.                                   )
                                           )
13                                         )
     BILL FRANKLIN DICKENSON; CITY)
14   OF PHOENIX,                           )
                                           )
15          Defendants.                    )
                                           )
16   _____)

17

18          Pending before the Court is the Motion for Summary Judgment of the City of Phoenix

19   (Dkt. # 154), which has been joined in part by Defendant Bill Franklin Dickenson (Dkt. #

20   165).  For the reasons explained below, the Court grants the motion as it pertains to the City

21   of Phoenix, grants the motion as it pertains to the Eighth Amendment claim against

22   Dickenson, and denies the motion as it pertains to the familial association claim against

23   Dickenson.[1]

24

25

26   _____

27          [1]Both parties have requested oral argument.  Those requests are denied because the
     parties have thoroughly discussed the law and the evidence, and oral argument will not aid
28   the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev.*, 933
     F.2d 724, 729 (9th Cir. 1991).

1

**BACKGROUND**

2    Plaintiff John Doe, a minor, alleges that he was molested by Defendant Dickenson on

3    several occasions and that both Dickenson and the City were responsible for the

4    molestations.[2]   At the time of the alleged acts, Dickenson was assigned to John Doe's

5    elementary school as a School Resource Officer ("SRO"), which is a law enforcement officer

6    assigned to a school.   Plaintiffs assert that John Doe and his mother, Plaintiff Jane Doe,

7    suffered injuries as a result of the molestations, including injury to their relationship.   The

8    factual background of this case, including the nature of the alleged molestations themselves,

9    is more thoroughly discussed in the Court's Order issued on November 14, 2008.   (*See* Dkt.

10   # 142.)   The facts thus need not be recapitulated here.

11   Plaintiffs filed their Complaint on October 16, 2007.   (Dkt. # 1.)   Plaintiffs asserted

12   state law claims for negligence, assault, and sexual conduct with a minor, as well as federal

13   law claims for "violation of Plaintiffs' rights under the Fourteenth Amendment" pursuant to

14   42 U.S.C. § 1983 (2003).   (*Id.* at 1.)   Specifically, Plaintiffs alleged that Defendant

15   Dickenson was acting "in accordance with the customs, practices, and policies of the Police

16   Department of the City of Phoenix," that the City "negligently trained and supervised its

17   employee Defendant Dickenson," and that "[a]s a result of Defendants' negligence and

18   misconduct, Ms. Doe and Mr. Doe suffered and continue to suffer emotional distress,

19   injuries, medical expenses and other damages."   (*Id.* at 2-3.)   Among the asserted injuries,

20   Plaintiff Jane Doe argues that her son has been required to go to therapy, that Jane Doe

21   herself still experiences pain because of what happened to her son, and that she believes her

22   son is "never going to be normal" again.   (Dkt. # 172 Ex. F at 129-32.)   The City has since

23   filed a motion for summary judgment, which asserts that Dickenson alone is responsible for

24   any injuries resulting from the alleged molestations.   (Dkt. # 154.)

25

26

_____

27   [2]Plaintiffs also brought claims against the Alhambra School District, but those claims
     have since been dismissed and the school district terminated from this action.   (*See* Dkt. ##

28   142, 162.)

1          **DISCUSSION**

2   **I.    Legal Standard**

3          Summary judgment is appropriate if the admissible evidence, viewed in the light most

4   favorable to the nonmoving party, "show[s] that there is no genuine issue as to any material

5   fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c);

6   *see Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). The moving

7   party bears the initial burden of supporting its contention that there is no genuine issue of

8   material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The burden is then on

9   the nonmoving party to establish that a genuine issue of material fact exists. *See id.*

10  Substantive law determines which facts are material, and "[o]nly disputes over facts that

11  might affect the outcome of the suit . . . will properly preclude the entry of summary

12  judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Similarly, the

13  dispute must be genuine; that is, the evidence must be "such that a reasonable jury could

14  return a verdict for the nonmoving party." *Id.*

15  **II.   Analysis**

16         The City argues that all of Plaintiffs' claims must be dismissed for a variety of

17  reasons. The Court will first discuss the City's challenges to Plaintiffs' federal law claims,

18  then assess the City's arguments against Plaintiffs' state law claims, and conclude by

19  addressing the City's assertion that punitive damages are not warranted.

20         **A.    Federal Law Claims**

21         The City argues that Plaintiffs' federal law claims fail, in whole or in part, because:

22  (1) the Complaint does not adequately allege a § 1983 claim against the City; (2) the record

23  lacks sufficient evidence establishing that deliberate indifference in training or supervision

24  caused a constitutional violation; (3) the Complaint does not allege that the City was

25  deliberately indifferent in hiring or investigating Dickenson; (4) there is no evidence of any

26  injury stemming from the City's alleged failure to undertake corrective measures in response

27  to Plaintiffs' allegations; (5) the Complaint does not allege any claim for interference with

28  familial association, and in any event there is no evidence in the record to support such a

claim; and (6) Plaintiffs cannot assert an Eighth Amendment claim.  Defendant Dickenson joins in arguments (5) and (6) only, arguing that he is not liable on the familial association and Eighth Amendment claims.  (Dkt. # 165 at 2.)  The Court will address each of these six arguments in turn.

## 1.    Sufficiency of the § 1983 Claim in the Complaint

The City argues that Plaintiffs' Complaint fails to allege a valid § 1983 claim against the City because: (1) the Complaint identifies no specific custom, practice, or policy that caused a constitutional deprivation, and (2) the Complaint states that the City was "negligent" in its training and supervision, not that it was "deliberately indifferent."  (Dkt. # 154 at 6-7.)  The City's arguments on this point are directed merely at the nature of Plaintiffs' pleading, and not at the evidence in the record (which the City challenges later).

On the first point, Plaintiffs properly plead a § 1983 claim.  Plaintiffs alleged that Dickenson was acting "in accordance with the customs, practices, and policies of the Police Department of the City of Phoenix."  (Dkt. # 1 at 2 ¶ 11.)  "'In this circuit, a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice.'"  *Lee v. City of Los Angeles*, 250 F.3d 668, 682-83 (9th Cir. 2001) (quoting *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988)).  Plaintiffs provided such a statement of policy here, and were not required to plead the nature of that policy with a greater degree of specificity.

The City's second argument, however, has more merit.  The Complaint states only that "Defendant City of Phoenix *negligently* trained and supervised its employee Defendant Dickenson."  (Dkt. # 1 at 3 (emphasis added).)  Mere negligence is not sufficient to establish a § 1983 claim for liability stemming from supervision or training; rather, the failure to adequately guard against violations of constitutional rights must rise to the level of "deliberate indifference" to those rights.  *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *see also Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 407 (1997) ("A showing of simple or even heightened negligence will not suffice.").  Plaintiffs' Complaint

- 4 -

1    never uses the words "deliberate indifference," nor does the Complaint use any other

2    language sufficient to plead a level of culpability beyond mere negligence.

3           However, because this case has advanced significantly without a challenge to

4    Plaintiffs' pleading, and because the parties have proceeded throughout discovery with the

5    clear knowledge that Plaintiffs were advancing a § 1983 claim against the City for improper

6    training and supervision (as evidenced by the Joint Proposed Case Management Plan), the

7    Court will reach the substance of the municipal liability claim.  For the reasons discussed

8    below, the Court agrees that the City is entitled to summary judgment on that claim.

9                    **2.      Evidence of Deliberate Indifference in Training or Supervision**

10          The City argues that there is insufficient evidence of deliberate indifference in its

11   training or supervision of Dickenson to survive summary judgment on Plaintiffs' § 1983

12   claim for municipal liability.  (Dkt. # 154 at 7-9.)  Section 1983 provides:

13                  Every person who, under color of any statute, ordinance,
                    regulation, custom, or usage, of any State . . . subjects, or causes
14                  to be subjected, any citizen of the United States . . . to the
                    deprivation of any rights, privileges, or immunities secured by
15                  the Constitution and laws, shall be liable to the party injured in
                    an action at law, suit in equity, or other proper proceeding for
16                  redress.

17   42 U.S.C. § 1983.  Under § 1983, local government entities are considered "persons" and

18   therefore may be sued, but the municipality's liability must be premised on its own infliction

19   of an injury and not on a respondeat superior theory.  *Monell v. Dep't of Soc. Servs.*, 436 U.S.

20   658, 690-91 (1978).   There are two ways of showing that a municipality inflicted a

21   constitutional injury: (1) by showing that a municipality itself violated someone's rights or

22   directed its employee to do so, or (2) by showing that the municipality's omissions were

23   responsible for a constitutional violation committed by one of its employees.  *Gibson v.*

24   *County of Washoe*, 290 F.3d 1175, 1185-86 (9th Cir. 2002).

25          Plaintiffs here follow the second route, arguing that the City's failure to train or

26   supervise Dickenson was responsible for the alleged acts of molestation.  (Dkt. # 181 at 13-

27   21.)  Both the Ninth Circuit and the United State Supreme Court have opined that this theory

28   of liability involves "much more difficult problems of proof" than the first.  *Gibson*, 290 F.3d

1   at 1186 (quoting *Brown*, 520 U.S. at 406).  "That a plaintiff has suffered a deprivation of

2   federal rights at the hands of a municipal employee will not alone permit an inference of

3   municipal culpability and causation; the plaintiff will simply have shown that the *employee*

4   acted culpably."  *Brown*, 520 U.S. at 406-07.

5        To establish municipal liability, a plaintiff must show that: (1) a municipal employee

6   violated his constitutional rights; (2) the municipality had a custom, practice, or policy that

7   amounted to "deliberate indifference"; and (3) the municipal custom, practice, or policy was

8   the "moving force" behind the employee's violation of the plaintiff's constitutional rights.[3]

9   *Gibson*, 290 F.3d at 1193-94.  Because "[a] policy can be one of action or inaction," *Long*

10  *v. County of Los Angeles*, 442 U.S. 1178, 1185 (9th Cir. 2006), a plaintiff seeking to show

11  that a municipality's failure to act caused an injury "must show that the municipality's

12  deliberate indifference led to its omission and that the omission caused the employee to

13  commit the constitutional violation," *Gibson*, 290 F.3d at 1186.

14       There is no dispute here over whether Dickenson's alleged acts of molestation, if true,

15  violated John Doe's constitutional rights.  *See Plumeau v. Sch. Dist. No. 40 County of*

16  *Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) ("[T]he Constitution protects a child's right to be

17  free from sexual abuse by school employees while attending public school.").  The City's

18  motion for summary judgment instead focuses on whether there is evidence of "deliberate

19  indifference" and whether any omission on the City's part was the "moving force" behind

20  the alleged constitutional violations.  (*See* Dkt. # 154 at 8-9.)  The Court finds that Plaintiffs'

21  claim for municipal liability cannot survive summary judgment under either of these prongs.

22

23

24       [3]This test is sometimes expressed as a four-part test, in which a plaintiff must show
    that: (1) he was deprived of a constitutional right; (2) the municipality had a policy; (3) the
25  policy evinced "deliberate indifference" to the plaintiff's constitutional rights; and (4) the
    policy was the "moving force" behind the constitutional violation. *See, e.g.*, *Oviatt* ex rel.
26  *Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (citing *Canton*, 489 U.S. at 389-91).
    Although the Supreme Court announced this test in the context of a claim for deliberate
27  indifference in training, the Ninth Circuit has recognized that the test applies to supervision
    claims as well. *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996).
28

#### a.   Deliberate Indifference

"Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Christie v. Iopa*, 176 F.3d 1231, 1240 (9th Cir. 1999) (quoting *Brown*, 520 U.S. at 410). "To prove deliberate indifference, the plaintiff must show that the municipality was on actual or constructive notice that its omission would likely result in a constitutional violation." *Gibson*, 290 F.3d at 1186. According to the Ninth Circuit:

> Deliberate indifference to a person's constitutional rights occurs when the need for more or different action "is so obvious, and the inadequacy of the current procedure so likely to result in the violation of constitutional rights, that the policymakers can reasonably be said to have been deliberately indifferent to the need."

*Lee*, 250 F.3d at 682 (quoting *Oviatt*, 954 F.2d at 1477-78) (internal brackets and ellipsis omitted). In other words, "the need for training must be obvious and violation of constitutional rights must be a highly predictable consequence." *Plumeau*, 130 F.3d at 439 n.4.

As Plaintiffs concede, there is no evidence in the record indicating that the City had any actual knowledge of sexual misconduct. Plaintiffs' only argument is that the need for some sort of further training was "obvious." Plaintiffs base that argument on the district court decision in *Doe v. Estes*, 926 F. Supp. 979 (D. Nev. 1996). In *Doe*, a public school student alleged that one of his teachers had molested him. *Id.* at 983. The student sued the teacher, a supervisor, and the school district under § 1983. *Id.* The school district moved for summary judgment, arguing that there was no evidence of deliberate indifference, but the district court denied that request because:

> the defendant school district had . . . no policy whatever regarding the reporting of suspected incidents of sexual abuse of students, had never instructed its employees in the techniques of recognizing the warning signs of suspected sexual abuse of students, [and] had never provided its staff with guidelines for dealing with such suspicions.

*Id.* at 988. The district court reasoned that these facts established the "stringent standard of fault" required for deliberate indifference, *Christie*, 176 F.3d at 1240, not because of any

1   evidence in the record, but rather because "it is today hardly remarkable to find in our

2   newspapers accounts of children sexually attacked by teachers" and because "[t]he last ten

3   or fifteen years have seen these shocking incidents repeated in dozens of communities across

4   the country," *Doe*, 926 F. Supp. at 987.

5          Here, even assuming that it would be proper for the Court to resolve a case-dispositive

6   motion by reference to facts about the prevalence of student molestations that are not in the

7   record, and even further assuming that the City's failure to train Dickenson could have been

8   the "moving force" behind the alleged molestations, *Doe* would still be inapplicable.  The

9   deliberate indifference in training that *Doe* found was an absence of training for *other school*

10  *employees* in how to recognize and stop sexual abuse.  *See id.* at 988 (finding deliberate

11  indifference based on the absence of a policy regarding "the reporting of suspected incidents

12  of sexual abuse of students," "recognizing the warning signs of suspected sexual abuse of

13  students," and "provid[ing] its staff with guidelines for dealing with such suspicions").

14  Plaintiffs' Complaint, on the other hand, only alleges that the City was deficient in training

15  *Defendant Dickenson*; it does not allege that the City's training of its other employees was

16  deficient.  (Dkt. # 1 at 3 ¶ 19.)  Plaintiffs' response to the motion for summary judgment

17  confirms that their only argument about training is that "the City was deliberately indifferent

18  in training *Officer Dickenson*."  (Dkt. # 181 at 13 (emphasis added).)

19         It is well-established, however, that a municipality is not deliberately indifferent in

20  failing to train law enforcement officers to not sexually assault those with whom they come

21  into contact.  *See Barney v. Pulsipher*, 143 F.3d 1299, 1308 (10th Cir. 1998) ("[W]e are not

22  persuaded that a plainly obvious consequence of a deficient training program [for prison

23  guards] would be the sexual assault of inmates.  Specific or extensive training hardly seems

24  necessary for a jailer to know that sexually assaulting inmates is inappropriate behavior.");

25  *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489-90 (11th Cir. 1997) (holding that a town

26  could not be held liable for a police officer's acts of molestation because a municipality's

27  failure to train officers to not molest suspects is not deliberate indifference); *Andrews v.*

28  *Fowler*, 98 F.3d 1069, 1077 (8th Cir. 1996) ("In light of the regular law enforcement duties

1  of a police officer, we cannot conclude that there was a patently obvious need for the city to

2  specifically train officers not to rape young women.").

3        The reasoning of these cases has been explained well by the Second Circuit:

4          It is not enough to show that a situation will arise and that taking
        the wrong course in that situation will result in injuries to

5          citizens. . . . *City of Canton* also requires a likelihood that the
        failure to train or supervise will result in the officer making the

6          wrong decision. *Where the proper response . . . is obvious to all
        without training or supervision, then the failure to train or*

7          *supervise is generally not "so likely" to produce a wrong
        decision as to support an inference of deliberate indifference by*

8          *city policymakers to the need to train or supervise.*

9  *Walker v. City of New York*, 974 F.2d 293, 299-300 (2d Cir. 1992) (emphasis added).  In

10  short, the City's failure to train Dickenson to not molest John Doe was not deliberate

11  indifference because it is obvious that Dickenson should not do such a thing.  Because

12  Plaintiffs' Complaint makes no claim that the City failed to properly train its other

13  employees, *Doe* does not apply, and Plaintiffs cannot establish deliberate indifference

14  sufficient to survive summary judgment.[4]

15                  **b.**    **Moving Force**

16        "In order to be a 'moving force' behind [a plaintiff's] injury, we must find that the

17  'identified deficiency' in the [municipality's] policies is 'closely related to the ultimate

18  injury.'" *Gibson*, 290 F.3d at 1196 (quoting *Canton*, 489 U.S. at 391).  Thus, "[t]he plaintiff's

19  burden is to establish 'that the injury would have been avoided' had the [municipality] had

20  a policy" that would have prevented the injury.  *Id.* (quoting *Oviatt*, 954 F.2d at 1478).

21  However, "[p]ointing to a municipal policy action or inaction as a 'but-for' cause is not

22  enough to prove a causal connection under *Monell*.  Rather, the policy must be the proximate

23  cause of the section 1983 injury."  *Van Ort*, 92 F.3d at 837; *see also McDade v. West*, 223

24  F.3d 1135, 1142 (9th Cir. 2000) ("Since it is clear that no state policy served as the 'moving

25

26          [4]The only possible assertion of deliberate indifference that remains would be
Plaintiffs' claim that the City failed to properly supervise Defendant Dickenson.  However,

27  it is not necessary to reach this issue because, as explained below, any such claim would fail

28  under the "moving force" prong.

1   force' behind the violation, there was no proximate causality between the municipality's acts
2   and the [injury].").

3        As these cases suggest, the causation inquiry is exacting.  "[A] plaintiff must show
4   that the municipal action was taken with the requisite degree of culpability and must
5   demonstrate a *direct causal link* between the municipal action and the deprivation of federal
6   rights." *Brown*, 520 U.S. at 404 (emphasis added).  "Where a plaintiff claims that the
7   municipality has not directly inflicted an injury, but nonetheless has caused an employee to
8   do so, *rigorous standards of culpability and causation* must be applied to ensure that the
9   municipality is not held liable solely for the actions of its employee." *Id.* at 405 (emphasis
10  added).  "To adopt lesser standards of fault and causation would open municipalities to
11  unprecedented liability under § 1983," for "[i]n virtually every instance where a person has
12  had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able
13  to point to something the city 'could have done' to prevent the unfortunate incident."
14  *Canton*, 489 U.S. at 391-92.

15       In this case, Plaintiffs' claims that the City was deliberately indifferent in training
16  Dickenson and in supervising him both fail under the "moving force" prong.  First of all,
17  Plaintiffs do not even respond to the City's arguments under this prong, and thus they are
18  deemed to have waived the issue.  *See Jenkins v. County of Riverside*, 398 F.3d 1093, 1095
19  n.4 (9th Cir. 2005) ("Jenkins abandoned her other two claims by not raising them in
20  opposition to the County's motion for summary judgment."); *Foster v. City of Fresno*, 392
21  F. Supp. 2d 1140, 1147 n.7 (E.D. Cal. 2005) ("[F]ailure of a party to address a claim in an
22  opposition to a motion for summary judgment may constitute a waiver of that claim.") (citing
23  *Abogados v. AT&T, Inc.*, 223 F.3d 932, 937 (9th Cir. 2000); *Doe v. Benicia Unified Sch.*
24  *Dist.*, 206 F. Supp. 2d 1048, 1050 n.1 (E.D. Cal. 2002)).

25       Moreover, on the merits, there is no evidence that the "moving force" behind the
26  claimed constitutional violations would have been anything other than Defendant
27  Dickenson's own deviant sexual impulses.  Plaintiffs have not adduced any evidence
28  suggesting that Dickenson molested John Doe because of the content, or absence of content,

of any of the City's training programs.  In the absence of any such evidence Plaintiffs have not established a genuine issue of material fact as to whether the contents of the City's training programs were the "moving force" behind Plaintiffs' injuries.  *See Andrews*, 98 F.3d at 1077 ("Andrews simply cannot demonstrate the close relationship necessary to conclude that the city's failure to properly train [police officer] Fowler *caused* him to rape Andrews or even raises a question of fact as to causation.").

In the same way, there is no genuine issue of material fact as to whether Plaintiffs' injuries were caused by any lack of supervision by the City.  "Usually, a failure to supervise gives rise to section 1983 liability only in the situations in which there is a history of widespread abuse."  *Bowen v. Watkins*, 669 F.2d 979, 988 (5th Cir. 1982); *compare Ware v. Jackson County*, 150 F.3d 873, 885 (8th Cir. 1998) (holding that a reasonable jury could conclude that a municipality was the moving force behind a prison officer's sexual misconduct because the municipality failed to supervise the officer even though there were a "number of reported acts of sexual misconduct" by that officer), *with D.T.* ex rel. *M.T. & K.T. v. Indep. Sch. Dist. No. 16*, 894 F.2d 1176, 1180, 1192-93 (10th Cir. 1990) (holding that a school district's policy of supervising its employees was not the "moving force" behind a teacher's alleged molestation of students because there was insufficient evidence of a direct causal link between only sporadic supervision and subsequent molestations), *and Santos* ex rel. *Santos v. City of Culver City*, 228 Fed. App'x 655, 659 (9th Cir. 2007) (affirming the district court's grant of summary judgment on a *Monell* claim under the "moving force" prong because there was no evidence of a causal link between city policies and the officer's actions).

Here, there is no evidence of such a history or pattern in the record.  Even if Dickenson might have been better supervised, there is simply no evidence from which a reasonable jury could conclude that the level of supervision *caused* Dickenson to molest John Doe.  *See Gibson*, 290 F.3d at 1186 ("[A] plaintiff must show that the municipality's deliberate indifference led to its omission and that *the omission caused the employee to commit the constitutional violation*.") (emphasis added).  Indeed, Plaintiffs' argument

1   regarding the City's deliberate indifference in supervision offers no legal authority and never

2   addresses the issue of causation.  (*See* Dkt. # 181 at 18-21.)  In the absence of any evidence

3   or argument suggesting that a lack of supervision "caused the employee to commit the

4   constitutional violation," *Gibson*, 290 F.3d at 1186, Plaintiffs cannot establish that any

5   deliberate indifference in supervision was the "moving force" behind their alleged injury.

6         For these reasons, summary judgment in favor of the City is appropriate on Plaintiffs'

7   § 1983 claim for municipal liability.

8                    **3.     Allegation of Deliberate Indifference in Hiring or Investigation**

9         The City argues that the Complaint does not allege deliberate indifference in its hiring

10  or investigation of Defendant Dickenson.  (Dkt. # 154 at 9-11.)  Plaintiffs fail to respond to

11  the City's argument.  Therefore, Plaintiffs have abandoned any such claim.  *See Jenkins*, 398

12  F.3d at 1095 n.4; *Foster*, 392 F. Supp. 2d at 1147 n.7.  Regardless, the Complaint does not

13  make any such allegation; it only alleges negligent training and supervision.  (*See* Dkt. # 1

14  at 3.)  Thus, the City prevails on this argument as well.

15                   **4.     Evidence of Injury Caused by the Absence of Corrective Measures**

16        The City argues that, although the Complaint alleges that the City failed to undertake

17  corrective measures in response to Plaintiffs' allegations, there is no evidence that this caused

18  any injury since no further molestations occurred after Plaintiffs made their allegations.

19  (Dkt. # 154 at 11-12.)  Plaintiffs decline to respond.  The causation problem would indeed

20  be fatal to such a claim, and in any event Plaintiffs' failure to respond has caused the claim

21  to be abandoned.  *See Jenkins*, 398 F.3d at 1095 n.4; *Foster*, 392 F. Supp. 2d at 1147 n.7.

22                   **5.     Allegation or Evidence of Interference with Familial Association**

23        The City and Dickenson argue that Jane Doe cannot maintain a claim for violation of

24  her due process right to familial association.  (Dkt. # 154 at 12-13; Dkt. # 165 at 2-4.)

25  Although the Court need not reach the issue in regard to the City (because Plaintiffs' claims

26  against the City do not otherwise withstand summary judgment), this is also one of the two

27  arguments that Defendant Dickenson advances.  Thus, the Court will reach the issue as

28  applied to Defendant Dickenson.

1    Defendants' first argument is that the Complaint contains no claim for interference
2    with familial association.  (Dkt. # 154 at 12.)  Although the Complaint is quite terse in this
3    regard, it does assert a claim pursuant to § 1983 that *both* Plaintiffs' Fourteenth Amendment
4    rights were violated.  (Dkt. # 1 at 1 ¶ 1.)  As described below, Jane Doe's right to familial
5    association is more precisely described as the right to the society and companionship of her
6    child, which the Ninth Circuit has found to stem from the Fourteenth Amendment.  The
7    Complaint also lays out the factual basis for Plaintiffs' lawsuit and alleges that both Plaintiffs
8    were injured in a number of ways, including through the violation of federally protected
9    rights.  (*See id.* at 1-4.)  It is also clear from the nature of the papers filed in this action,
10   including the Joint Proposed Case Management Plan, that all of the parties have been aware
11   that Plaintiffs were pursuing this claim throughout the course of litigation.  (*See* Dkt. # 22
12   at 10.)  Under these circumstances, the Court cannot say that the Complaint fails to put
13   Defendants on notice of Jane Doe's claim.  *See* Fed. R. Civ. P. 8(a)(2) (requiring only a
14   "short and plain statement of the claim"); Fed. R. Civ. P. 8(e) ("Pleadings must be construed
15   so as to do justice."); *Morrison v. Jones*, 607 F.2d 1269, 1275 (9th Cir. 1979) ("[W]e are
16   required to construe complaints under the Civil Rights Act liberally."); *cf. Lee*, 250 F.3d at
17   682 ("Here, plaintiffs' § 1983 claims meet the requirements of notice pleading.  Indeed,
18   defendants' papers filed in support of their motions to dismiss and on appeal demonstrate that
19   they had fair notice of what the plaintiffs' claims are and the grounds upon which they
20   rest.").  The Court therefore rejects Defendants' argument that the familial association claim
21   was insufficiently pled.

22   Defendants' second argument is that Jane Doe's claim cannot survive summary
23   judgment because "the constitutional claim is limited to instances in which a parents' rights
24   [sic] are *permanently* impaired," and in this case "Jane Doe's right to the companionship of
25   her son has not been permanently terminated or impaired."  (Dkt. # 154 at 12-13.)  In its
26   reply brief, the City alters its argument somewhat to assert that even if a non-permanent
27   deprivation of Jane Doe's constitutional right is actionable, that deprivation must

28

nevertheless be "total."[5]  (Dkt. # 186 at 7-8.)  Upon review of the relevant caselaw, however, the Court does not agree that an impairment of the right to the society and companionship of one's child must be either "permanent" or "total" to present a valid claim under § 1983.

It is well-established in the Ninth Circuit that "parents have a fundamental liberty interest in maintaining a relationship with their children which is protected by the Fourteenth Amendment." *Kelson v. City of Springfield*, 767 F.2d 651, 654 (9th Cir. 1985).  Specifically, "a parent has a constitutionally protected liberty interest in the companionship and society of his or her child," and "[t]he state's interference with that liberty interest without due process of law is remediable under section 1983." *Id.* at 655.

Defendants offer no authority holding that only "permanent" or "total" deprivations of this right are actionable under § 1983, nor do Defendants make a conceptual argument as to why that should be.  Indeed, there is nothing inherent in the type of damage done to a parent-child relationship as a result of molestation that would suggest that such damage cannot be permanent.  Rather, Defendants simply assert that the relevant caselaw has tended to focus on deprivations that are "permanent" and "total," such as in cases where the child has been killed or parental rights have been terminated.  Although the bulk of cases may focus on those types of injuries, other cases have involved injuries that are less than permanent and less than total.

For instance, *Ovando v. City of Los Angeles*, 92 F. Supp. 2d 1011 (C.D. Cal. 2000), permitted a child to pursue § 1983 claims for violation of her right to the society and companionship of her father, even though the alleged injuries were not both "permanent" and "total."  In that case, a man had been shot and wrongfully imprisoned for three years as a result of police misconduct, which allegedly caused him to become a paraplegic and to suffer

---

[5]"The district court need not consider arguments raised for the first time in a reply brief." *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).  The Court is skeptical that the City's argument about "permanent" deprivations is the same as its argument about "total" deprivations, but in the interests of inclusiveness the Court will nevertheless reach the City's argument on both points.

brain damage. *Id.* at 1014-15. The man was released from prison when the district attorney's office discovered the police misconduct, and the man's daughter brought a § 1983 claim against the city that had employed the police officers. *Id.* at 1015. The daughter alleged that her constitutional right to the society and companionship of her father had been violated in two ways: (1) by his wrongful imprisonment, and (2) as a result of his physical and mental impairments. *Id.* at 1018. The city moved to dismiss the case, arguing that the alleged injuries were not sufficient to state a claim under § 1983. *Id.* at 1015.

The court denied the city's motion. First, the court squarely rejected the argument that the daughter's injury stemming from her father's wrongful imprisonment was not actionable simply because it was less than permanent (the same argument the City advances here). *Id.* at 1019 ("Nowhere [does the Ninth Circuit] indicate that a deprivation of a duration shorter than the entirety of the child's life was not a 'deprivation' cognizable under Section 1983, and this Court can find no principled basis for drawing such a distinction."). Next, the court held that the daughter could also maintain the claim stemming from her father's mental injuries because "injury to a parent's mental capacity can infringe on a child's ability to create and maintain the emotional bond protected by the Fourteenth Amendment,"[6] even though the actual degree of that impairment was a factual question. *Id.* at 1021. Thus, the court held that both a non-permanent deprivation (a three-year imprisonment) and a non-total deprivation (some degree of mental limitation) were actionable under § 1983.

In so holding, the *Ovando* court looked to the Supreme Court's view of how the due process clause is implicated by the deprivation of property rights. *Id.* at 1019-20. In the context of deciding that a state statute that authorized prejudgment attachment of real estate was unconstitutional, the Supreme Court has held that even temporary and partial deprivations of property implicate due process protections:

---

[6]The *Ovando* court drew a distinction between physical and mental injuries, holding that the former cannot interfere with familial associations while the latter can. 92 F. Supp. 2d at 1020-21. This Court does not express an opinion on that distinction.

[T]he State correctly points out that these effects do not amount to a complete, physical, or permanent deprivation of real property; their impact is less than the perhaps temporary total deprivation of household goods or wages. *But the Court has never held that only such extreme deprivations trigger due process concern.* To the contrary, our cases show that even the temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protections.

*Connecticut v. Doehr*, 501 U.S. 1, 12 (1991) (emphasis added and citations omitted). As *Ovando* demonstrates, temporary or partial impairments of a liberty interest in the integrity of a family relationship merit the same due process protection as temporary or partial impairments of property interests. *See* 92 F. Supp. 2d at 1020.

Supreme Court precedent supports this conclusion, for several cases have extended due process protection to plaintiffs that have suffered a deprivation of the right to raise and bring up a child, even though the deprivation was neither "permanent" nor "total." *See Moore v. City of East Cleveland*, 431 U.S. 494, 504-06 (1977) (extending due process principles to invalidate a statute that limited the rights of members of non-nuclear families to live with one another, even though the statute did not limit other aspects of their familial association and the deprivation was not intrinsically permanent); *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 534-35 (1925) (finding that a law requiring children to attend public school "unreasonably interferes with the liberty of parents and guardians to direct the upbringing and education of children under their control" and holding the law unconstitutional, even though the deprivation was not permanent, in that it would last only as long as the child was of school age, and not total, in that it did not interfere with other aspects of upbringing).[7]

---

[7]This is not to say that *all* deprivations that are less than total or less than permanent are actionable, for there may be deprivations that are so brief and otherwise justified that due process principles do not apply. *See, e.g.*, *Nicholson v. Scoppetta*, 344 F.3d 154, 172 (2d Cir. 2003) ("[B]rief removals [of a child from parental custody] generally do not rise to the level of a substantive due process violation, at least where the purpose of the removal is to keep the child safe during investigation and court confirmation of the basis for removal."). The Court merely holds that a § 1983 action is not inherently foreclosed simply because deprivation of the right to familial association is less than permanent or less than total.

1    Indeed, at its core, Defendants' argument that Jane Doe's constitutional injury was

2    neither "permanent" nor "total" is an argument about the *severity* of her injury.  Arguments

3    about the severity of injuries, however, are more properly directed to the question of

4    damages, not to the question of liability.  *See Ray v. Henderson*, 217 F.3d 1234, 1243 (9th

5    Cir. 2000) ("[T]he severity of an action's ultimate impact . . . goes to the issue of damages,

6    not liability.") (internal quotations omitted).  Here, there is evidence that John Doe has been

7    required to undergo therapy, that he is "never going to be normal" again, and that Jane Doe

8    continues to suffer emotional pain as a result.  (Dkt. # 172 Ex. F at 129-32.)  From this, a

9    reasonable jury could conclude that Jane Doe has suffered at least some loss of her son's

10   society and companionship.  Thus, summary judgment on this claim is not appropriate.

11   Finally, Defendant Dickenson, citing a number of cases from other Circuits, argues

12   that Jane Doe cannot maintain her § 1983 claim because there is no evidence that Dickenson

13   actually intended to harm the parent-child relationship between Jane Doe and John Doe.

14   (Dkt. # 165 at 2-4.)  The Ninth Circuit has explicitly taken a different position from the cases

15   Dickenson cites.  *Smith v. City of Fontana*, 818 F.2d 1411, 1420 n.12 (9th Cir. 1987) ("As

16   long as the state official's *action* which deprived the plaintiffs of their liberty was more than

17   merely negligent, the plaintiffs can state a section 1983 claim without further alleging that

18   the official was trying to break up their family."), *overruled on other grounds by Hodgers-*

19   *Durgin v. De La Vina*, 199 F.3d 1037, 1041 n.1 (9th Cir. 1999).  Thus, the absence of

20   specific intent in this regard does not entitle Dickenson to summary judgment.

21                    **6.    Applicability of the Eighth Amendment**

22   The City argues that the Eighth Amendment does not apply (Dkt. # 154 at 13), and

23   Dickenson joins in that argument (Dkt. # 165 at 2).  Plaintiffs do not respond.  Plaintiffs

24   therefore have abandoned this claim.  *See Jenkins*, 398 F.3d at 1095 n.4.  Even if the claims

25   were not abandoned, the Eighth Amendment does not apply until after a criminal conviction

26   has occurred and a sentence has been handed down.  *Graham v. Connor*, 490 U.S. 386, 393

27   n.6 (1989) ("Judge Friendly . . . thought that the Eighth Amendment's protections did not

28   attach until after conviction and sentence.  This view was confirmed by *Ingraham v. Wright*,

1   430 U.S. 651, 671 n.40 (1977) ('Eighth Amendment scrutiny is appropriate only after the

2   State has complied with the constitutional guarantees traditionally associated with criminal

3   prosecutions').") (internal and parallel citations omitted).  Because Plaintiffs have not been

4   convicted or sentenced here, they have no Eighth Amendment claim.

5          **B.     State Law Claims**

6          The City argues that Plaintiffs' state law claims fail because the City is statutorily

7   immune from liability pursuant to Arizona Revised Statutes section 12-820.05(B) (2003).[8]

8   That statute provides that "[a] public entity is not liable for losses that arise out of and are

9   directly attributable to an act or omission determined by a court to be a criminal felony by

10  a public employee unless the public entity knew of the public employee's propensity for that

11  action."  Ariz. Rev. Stat. § 12-820.05(B).  Liability stemming from knowledge of an

12  employee's propensity to engage in felonious action is a "limited exception" to this statutory

13  grant of municipal immunity. *McGrath v. Scott*, 250 F. Supp. 2d 1218, 1234 (D. Ariz. 2003).

14         Plaintiffs agree that this statute requires them to establish that the City had some

15  actual knowledge of Dickenson's propensity to molest children, and Plaintiffs do not contest

16  that their losses in this case would arise out of and be directly attributable to a criminal felony

17  committed by a public employee (specifically, Dickenson's alleged molestation of John

18  Doe).  *See* Ariz. Rev. Stat. § 13-1405 (Supp. 2008) (making sexual conduct with a minor a

19  felony offense).  Rather, Plaintiffs argue that the City knew of Dickenson's propensity to

20  molest children based on certain "red flags." (Dkt. # 181 at 12-13.)  The relevant "red flags"

21  of which the City was ostensibly aware were that Dickenson: (1) "would spend many hours

22  helping at the school and helping the kids" (Dkt. # 172 Ex. K); (2) would drive some students

23  to and from school, and specifically that he was named Employee of the Month by the school

24  district because "he brings kids to school who wouldn't obey their parents, and he takes kids

25

26         [8]The City also argues that summary judgment is proper because there is insufficient
    evidence that any negligent training or supervision caused the injury and that Dickenson was
27  acting outside the scope of his employment.  (Dkt. # 154 at 14-17.)  Because summary
    judgment is otherwise appropriate, the Court need not reach these arguments.
28

home when their parents forget to pick them up" (Dkt. # 172 Ex. DD); and (3) would occasionally pay for students' field trip costs (Dkt. # 172 Ex. S at 56).[9]

---

[9]None of the other evidence Plaintiffs assert is proper for consideration. For instance, Plaintiffs discuss the hindsight opinions of the school principal regarding Dickenson's conduct, but there is nothing in the record to suggest that the City was aware of this evidence (and the record does not establish that the principal was an employee of the City). Plaintiffs further point out that one of Dickenson's fellow officers found some of Dickenson's behavior "odd" (Dkt. # 172 Ex. T at 7), and that another was "concerned for Officer Dickenson because of how it looked that he spent so much time with the kids and at the school" and "suggested Officer Dickenson not spend so much time helping at the school and do other things" (Dkt. # 172 Ex. K). These are hearsay statements from unauthenticated police reports and thus are inadmissible. *See Kight v. Guilford*, No. CV-07-0418-PHX-DGC, 2008 WL 2026355, at *5 (May 9, 2008) ("The police reports submitted by Defendants are not admissible evidence. There is no accompanying verification by the custodian of records, and the reports contain hearsay evidence. Defendants have not identified any applicable exception to the hearsay rule. As such, they will not be considered by the Court.").

Also, although Plaintiffs do not discuss the issue in the state law context, Plaintiffs elsewhere point out that Dickenson may have been sexually assaulted as a child. (*See* Dkt. # 172 Ex. Q.) Plaintiffs suggest that this creates an issue of fact regarding deliberate indifference under § 1983 because "[v]ictims of child sexual abuse are more likely to become perpetrators of child sexual abuse as adults." (Dkt. # 181 at 19.) Even if Plaintiffs had argued that such a fact was relevant to the state law issue, Plaintiffs have failed to properly provide evidence to support it. Plaintiffs' statement of facts citation for this matter is inconsistent throughout their briefing, but Plaintiffs presumably mean to refer to ¶ 42, which includes a similar assertion about the "probability that a person who was sexually abused would become an abuser." (*See* Dkt. # 172 at 20 ¶ 42.) However, the record citation included in that statement of fact does not support such an assertion. (*See id.* (citing *id.* Ex. I at 67).) The Court therefore cannot rely on it. *See Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) ("[A] district court is 'not required to comb the record to find some reason to deny a motion for summary judgment[.]'") (quoting *Forsberg v. Pac. Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)).

Moreover, even if the Court considered this as evidence, the mere fact that victims of child abuse are more likely to engage in abusive conduct than members of the general population does not tend to establish that victims of past abuse have a *propensity* to abuse children. In the same way, if Plaintiffs had produced evidence that male school employees were more likely to molest children than female school employees, the mere fact that Dickenson is male would not be evidence that he has a propensity to molest children. While there might be some level of likelihood at which such correlational evidence would inherently establish causal propensity, Plaintiffs have not provided any evidence along those lines in this case.

1     Even assuming that all this evidence is true, and even assuming that it is admissible,
2  no reasonable jury could conclude that the City "knew" that Dickenson had a propensity to
3  molest children based on these facts.  The farthest the cases have ever gone is to suggest that
4  a public entity "knew" of an employee's propensity to commit a criminal act when it had
5  actual knowledge that its employee committed an act or acts in the past that were similar to
6  the harm suffered by the plaintiff.  *See McGrath*, 250 F. Supp. 2d at 1233-35 (finding that
7  a plaintiff who brought claims for assault and battery against an Arizona police officer and
8  the State of Arizona made sufficient allegations to survive a motion to dismiss under section
9  12-820.05(B) because the plaintiff alleged that the officer had a prior complaint for excessive
10  force and had admitted to numerous other incidents resulting in counseling and reprimand);
11  *State of Arizona v. Heinze*, 196 Ariz. 126, 128, 131, 993 P.2d 1090, 1092, 1095 (Ct. App.
12  1999) (finding that a plaintiff who brought claims for sexual assault against a state agency
13  and its employee presented sufficient evidence to survive summary judgment under an
14  analogous immunity statute because the plaintiff provided evidence that the employee had
15  engaged in "multiple acts of sexual misconduct and harassment" of which the agency was
16  aware).  Here, unlike *McGrath* and *Heinze*, there is no evidence that the City knew of, or that
17  Dickenson had ever engaged in, any past improper conduct with minors (or any type of
18  misconduct, sexual or otherwise).  Thus, Plaintiffs' state law claims are barred by section 12-
19  820.05(B).

20     Even if there were a case in which something less than knowledge of past actions
21  similar to the alleged harm could establish a public entity's knowledge of criminal propensity
22  under section 12-820.05(B), this is not such a case.  Evidence that Dickenson helped around
23  the school, helped students get to and from school, and helped students finance field trips
24  simply does not, in and of itself, give rise to knowledge that Dickenson had a propensity to
25  molest children.  This evidence could only suggest such a propensity if the City knew that
26  these behaviors, although facially innocent, nevertheless indicated that the person who
27  engaged in them had a propensity to molest children.  There is no such evidence in the
28  record.  Thus, Plaintiffs have failed to establish that the "limited exception" to municipal

immunity in section 12-820.05(B) applies to the circumstances of this case.  The City is therefore entitled to summary judgment on Plaintiffs' state law claims.

### C.   Punitive Damages

The City argues that it cannot be compelled to pay punitive damages, citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) ("[A] municipality is immune from punitive damages under 42 U.S.C. § 1983."), and Arizona Revised Statutes section 12-820.04 (2003) ("Neither a public entity nor a public employee acting within the scope of his employment is liable for punitive or exemplary damages."). (Dkt. # 154 at 17.)  Plaintiffs decline to respond and thus have abandoned any claim for punitive damages.  *See Jenkins*, 398 F.3d at 1095 n.4; *Foster*, 392 F. Supp. 2d at 1147 n.7.  Given Plaintiffs' failure to respond, and in light of the authorities cited by the City, summary judgment is appropriate.

### CONCLUSION

The City is entitled to summary judgment on Plaintiffs' federal and state law claims. Dickenson is entitled to summary judgment on the Eighth Amendment claim, but he is not entitled to summary judgment on Jane Doe's familial association claim.

**IT IS THEREFORE ORDERED** that the Motion for Summary Judgment of the City of Phoenix (Dkt. # 154) is **GRANTED**, except insofar as it argues that Plaintiff Jane Doe cannot maintain a § 1983 claim against Defendant Dickenson for violation of her right to the society and companionship of John Doe, to which extent it is **DENIED**.

**IT IS FURTHER ORDERED** that the City of Phoenix is **TERMINATED** from this action.

DATED this 29th day of April, 2009.

G. Murray Snow
United States District Judge